**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **RIVERPOINT MANAGEMENT, LLC,** | ) | **CASE NO. 8:06CV301** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| **vs.** | ) | **AND ORDER** |
| | ) | |
| **MARY KLEINHOLZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

The Court denied the Plaintiff's Motion for a Preliminary Injunction in the Memorandum and Order dated June 12, 2006. I concluded that the Plaintiff, Riverpoint Management Inc. ("Riverpoint"), failed to carry its burden of demonstrating that it faced an imminent threat of irreparable harm, and that the application of the *Dataphase* factors did not warrant the issuance of a preliminary injunction in this case. Plaintiff seeks reconsideration of that decision. Riverpoint argues that the Court misapplied the law and that new evidence demonstrates that Riverpoint faces a threat of irreparable harm. At a minimum, Riverpoint asks the Court to order the Defendant, Mary Kleinholz, to return or destroy any documents in her possession that at one time belonged to Riverpoint.

### Standard of Review

NECivR 60.1(c) provides:

Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of (1) a showing of manifest error in the prior ruling; or (2) a showing of new facts or legal authority, neither of which could have been brought to the court's attention earlier with reasonable diligence.

**Prior Ruling**

Riverpoint contends that the Court applied an incorrect standard by requiring Riverpoint to demonstrate an actual misappropriation by Kleinholz of Riverpoint's trade secrets rather than a threatened misappropriation.   I will not grant the motion to reconsider on this basis because Riverpoint has misconstrued the Court's analysis and misstates the holding.   In finding that Riverpoint failed to carry its burden of proving the need for extraordinary preliminary relief, I found no evidence that "there exists an imminent threat of irreparable harm to Riverpoint." (Filing No. 12, at 6).

Riverpoint argues that it demonstrated "both actual and threatened misappropriation," and that this showing is sufficient to warrant the issuance of a preliminary injunction.  I agree that the Nebraska Trade Secrets Act authorizes injunctive relief  against threatened or actual misappropriations of trade secrets, but the Act simply does not address the Plaintiff's burden of showing an imminent threat of irreparable harm in the context of a request for preliminary injunctive relief. *See* Neb. Rev. Stat. § 87-503. Irreparable harm is the type of harm that cannot be compensated for by an award of monetary damages.   Riverpoint has demonstrated that Kleinholz misappropriated some of its information, but Riverpoint has not carried its burden of showing by a preponderance of the evidence that the misappropriation created a threat of irreparable harm to Riverpoint.

Riverpoint directs the Court to *Wyeth v. Natural Biologies, Inc.,* 395 F.3d 897 (8th Cir. 2005), for the proposition that a misappropriation of a trade secret can constitute the type of irreparable harm that warrants injunctive relief.  The *Wyeth* case can be distinguished from this case in many ways.  First, the *Wyeth* case involved permanent injunctive relief,

2

not preliminary injunctive relief.  Second, the information that was shown following a trial to be a trade secret was the plaintiff's manufacturing process of extracting conjugated estrogens from a natural source to make a hormone replacement therapy drug – which is very different from the lists of actual and potential clients and consultants at issue here. Perhaps the most significant distinguishing fact is that the defendant in Wyeth "apparently concedes that the . . . [p]rocess is not generally known or readily ascertainable. . . ."  In this case, Kleinholz has made no such concession.  Based upon these factual and legal distinctions, I do not find *Wyeth* particularly instructive.

Plaintiff also directs the Court to *Emerson Elec. Co. v. Rogers,* 418 F.3d 841 (8th Cir. 2005), for the proposition that an employer need not demonstrate that actual damage has occurred, only that there is a threat of irreparable harm, before a preliminary injunction may issue.  In that case, the Eighth Circuit Court affirmed the district court's issuance of a preliminary injunction enjoining the plaintiff's former sales representative from contacting the plaintiff's customers, finding that the former employee's fifteen years with the plaintiff company would enable him to exert "special influence over [the plaintiff's] customers."  *Id.* at 845.  The former employee was enjoined pursuant to a non-competition agreement that was upheld as reasonable under Missouri law.  In this case, little evidence has been presented to demonstrate what amount of influence, if any, Kleinholz had over Riverpoint's clients after her six-month's employment with Riverpoint.  There was no evidence that Kleinholz possessed a comparable "special influence" over Riverpoint's customers or that she leveraged, or even could leverage, her very short-term relationships with Riverpoint's clients to the economic advantage of her new employer, Concentric Corporation.

3

Riverpoint contends that the information taken by Kleinholz derives independent economic value from not being known to, or ascertainable through proper means by, other persons; but Riverpoint has yet to demonstrate by a preponderance of the evidence that the information is not known to, or ascertainable through proper means by, others. *See Selection Research, Inc. v. Murman*, 433 N.W.2d 526, 532 (Neb. 1989). Riverpoint's President, Dominic Schilt, testified that Riverpoint considers client and customer lists confidential and proprietary.  He stated that the documents that Kleinholz sent to her personal e-mail account included a few employees' direct phone numbers and  e-mail addresses that might not be generally accessible.  Schilt also explained, however,  that some information on the documents identifies only potential leads or targets.  Schilt acknowledged that any person might be able to look up a company name, contact-person name, phone number, and address from an internet job site, but that where the document records a particular employee name and job title, that specific information may not be generally accessible.  With regard to the candidate resumes, Schilt testified that Riverpoint treated them as confidential and proprietary, and he agreed that Kleinholz would not have had access to them unless the candidate had provided a copy to her or to another person. There was no testimony that any candidate had any type of exclusive listing or relationship with Riverpoint.

Thus, I have only limited evidence about the origin of the information Riverpoint deems to be secret and about the value of the information to Riverpoint.  Riverpoint did not submit any persuasive evidence regarding the nature of the harm it could sustain.  I am not convinced on the record before me that the subject information imparts anything of value or bestows any competitive advantage upon the possessor of the information.  Because

4

the Court cannot evaluate on this record the extent to which the information that Kleinholz took is proprietary or exclusive to Riverpoint, I am not persuaded that Riverpoint has shown that it faces any imminent threat of irreparable harm caused by Kleinholz's possession of the information.

The Eighth Circuit Court has recently stated that when a district court's findings of fact do not evidence the considerations that undergird the issuance of a preliminary injunction, then an abuse of discretion must be found, and the preliminary injunction must be dissolved. *Mid-America Real Estate Co. v. Iowa Realty Co.,* 406 F.3d 969, 977 (8th Cir. 2005). If Riverpoint is able to demonstrate a violation of the Nebraska Trade Secrets Act, then Riverpoint should be able to prove what damages it may have sustained because of the loss of a contract or placement. There is no evidence that leads me to believe that money damages could not fairly and adequately compensate Riverpoint for any harm it may have sustained or may sustain in the future.

### New Evidence

Plaintiff has offered additional documents in support of this motion. The documents were disclosed pursuant to discovery against Concentric Corporation, Kleinholz's employer and a competitor of Riverpoint. I have considered the new evidence, but I conclude that it is insufficient to show the type of irreparable harm or likelihood of success on the merits that would warrant broad, preliminary injunctive relief.

As was explained by the President of Concentric, this industry is based on relationships, and both Riverpoint and Concentric, and presumably other businesses in the same industry in the Midwest, compete for business from the same companies. Overlap of their efforts would not be wholly unexpected. Concentric sales records show that

5

Kleinholz has made contact with companies or their employees since the time she became employed at Concentric.  Some of these companies and one employee that appear in Concentric's records are also identified as current or  potential clients on Riverpoint's lists.  Three instances are similar.  The Concentric documents reflect that on or about May 12, 2006, Kleinholz generated three "Candidate Profiles" indicating that she had made contact with three employees at three different companies.  (Filing No. 60; Plaintiff's evidence in support of the motion to reconsider).   The three companies appear on the document entitled,  "Riverpoint's Omaha Accounts by Territory – Mary's Named Accounts," although none of the three employees' names appears on that Riverpoint list.[1]  Kleinholz explained that her contact with the three individuals occurred after her employment at Riverpoint was terminated and was initiated through third-party contacts that had nothing to do with her employment at Riverpoint. (Filing No. 62, Kleinholz Affidavit dated July 5, 2006).  Because there is insufficient evidence in the record to show what, if anything, Riverpoint was doing with these companies and the potential effect on Riverpoint caused by Kleinholz's contact with these individuals, I conclude that this "new" evidence provides no basis for a different result on the Plaintiff's motion or preliminary injunction.

Riverpoint also argues that the new evidence shows that Kleinholz had contact with at least one consultant who was also identified on Riverpoint's "hot candidates" list.  (Filing

---

[1]  Two of the three companies had no contact person identified as associated with the company on the "Omaha Accounts by Territory - Mary's Named Accounts."  Only one of the three companies appears on Riverpoint's document entitled, "Omaha Accounts by Territory - Jerry's Named Accounts", but the contact persons associated with that company were not identified in any of Kleinholz's "Candidate Profiles" for Concentric.  The other two companies did not even appear on Jerry Keathley's list.

6

No. 60, doc.118; and Ex. 40).[2]  Kleinholz responded by stating that she has not contacted the consultant on behalf of Concentric, and she pointed out that Concentric's "Candidate Profile" for this consultant does not include the candidate's phone number. (Filing No. 62, Kleinholz Affidavit).  Based on this evidence, I find that the individual consultant who was identified on Riverpoint's "hot candidates" list was so identified before Kleinholz left Riverpoint; that Riverpoint's "hot candidates" list was sent from Riverpoint to Kleinholz's personal e-mail account by Kleinholz in violation of Riverpoint's stated policy before her termination from Riverpoint; that Kleinholz continues to maintain that she has not used any of the information taken from Riverpoint documents to benefit Concentric.  I also find that the individual consultant has a "Candidate Profile" in Concentric's database as of May 12, 2006, which is associated with user "Mary Kleinholz."

These findings give the appearance that Kleinholz is preparing to use the information for Concentric's benefit, which would constitute a threat of harm.  Still, the question remains whether the harm is irreparable in the sense that damage from that harm cannot be adequately compensated for with money damages, and whether the information about the individual consultant constitutes a trade secret entitling Riverpoint to protection. I still have no evidence relative to how and why this individual consultant is important to Riverpoint.  I will not presume or guess how this candidate's placement might affect Riverpoint.  A threat of irreparable harm will not be assumed.  In the absence of evidence regarding what threatened harm or actual harm might come to Riverpoint if Kleinholz

---

[2] The consultant's current employer is identified on the Jerry's Named Accounts llist, but the consultant is not the contact employee listed on that list.  Kleinholz argued that the consultant's employer did not do business with Riverpoint while she was employed there.

7

contacts, or already has contacted, the consultant, and in the absence of evidence that there is an exclusive relationship between the consultant and Riverpoint, I conclude that there is no factual basis upon which to reconsider the previous Memorandum and Order.

One of the main problems with the Plaintiff's proof in support of the motion for preliminary injunction was, and continues to be, its inability to show its exclusive or restricted access to prospective and existing client information and consultant resumes. For a business in the job-placement industry to keep such information is common; putting the information in a particular form does not infuse it with additional value. Value must be added to such lists by individuals working the accounts and building personal relationships. Jerry Keathley's and Kleinholz's Omaha Accounts by Territory lists appear to contain very minimal "value-added" information about particular clients, such as a contact employee's job title or an occasional cell phone number. However, persuasive evidence regarding who added the value, what steps are taken to guard the confidential nature of the value-added information, and what impact Kleinholz's threatened or actual use of that value-added information might have on Riverpoint, has not been sufficiently presented.

I agree that the Nebraska Trade Secrets Act authorizes injunctive relief against threatened or actual misappropriations of trade secrets, Neb. Rev. Stat. § 87-503. Whether the information that is the subject of this motion constitutes a trade secret is still an open question, and the issue bears on the *Dataphase* factor that analyzes the Plaintiff's likelihood of success on the merits. However, Riverpoint's arguments for reconsideraion would require the Court to find, based on generalities and assumptions, that the information at issue constitutes a trade secret. I am unwilling to make such a finding because I conclude that a preponderance of the evidence does not support it.

8

I have also considered Kleinholz's admission that she took some Riverpoint information, and continues to possess it, with the knowledge that her actions were in violation of Riverpoint policy (although arguably taken with Schilt's implied permission). Because Riverpoint employed expedited discovery to determine what was taken by Kleinholz, and considering Schilt's testimony that Riverpoint was able to recover all the information that Kleinholz sent to her personal e-mail account, I conclude that ordering Kleinholz to return Riverpoint's documents at this time would serve no useful purpose. For these reasons, the Court will not order the documents to be returned.

**Conclusion**

Because I find no evidence that Riverpoint faces an imminent threat of irreparable injury in the absence of preliminary injunctive relief, the denial of the motion for preliminary injunction on the ground of manifest error is expressly reaffirmed.   Accordingly,

IT IS ORDERED:

1.     The Plaintiff's Motion for Reconsideration (Filing No. 57) is granted, and the matter has been reconsidered based on the submission of new evidence; and

2.     Having reconsidered the matter, the Court's denial of the Plaintiff's motion for preliminary injunction is expressly affirmed.

Dated this 17th day of July, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

9